# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK ANGELO SPALLIERO, | Case No.: 1:16-cv-01387-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff Nick Angelo Spalliero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on October 4, 2012, and an application for supplemental security income on May 13, 2014. AR 18, 199-205, 281.[2] Plaintiff alleged that he became disabled due to obsessive compulsive disorder ("OCD"), bipolar disorder, severe depression, back injury, neck injury, no grip in hands, unable to stand or sit for extended periods of time and severe aggression. AR 219. Plaintiff's application was denied initially and on reconsideration. AR 104-08, 112-15. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Giannikas held a hearing on September 2, 2014, and issued an order denying benefits on November 14, 2014. AR 15-30, 37-71. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 13. This appeal followed.

### Relevant Hearing Testimony

The ALJ held a hearing on September 2, 2014, in Long Beach, California. AR 37-71. Plaintiff appeared by video teleconference, and was represented by Brian Reed. Impartial Vocational Expert Ruth Arnush also appeared. AR 39.

In response to questioning by the ALJ, Plaintiff first explained that during 2010, he was taken out of work twice on State Disability for overstressing and stressful situations during his sales jobs. He believed his supervisors were a little overwhelming with their expectations and pressured him. When he wasn't making the commission, it put a lot of stress on him. AR 44-45.

Plaintiff testified that he cannot work because he has pain on both sides of his body, he has numbness, he sometimes cannot grip a pencil, he cannot sit for very long, and he has bipolar symptoms when stressed. The bipolar symptoms make him not want to pay attention. He also has injuries and pain from a car accident in 2012. When asked why he could not do a job where all he had

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

to do was sit at a table and put items in boxes as they passed on a conveyor belt, Plaintiff testified that he would not be able to sit there for more an hour or hour and a half at a time depending on his lower back. When his lower back starts, he cannot feel his feet, legs and cal ves. AR 45- 47.

In response to questions from his attorney, Plaintiff testified that he could not work as of his onset date of August 6, 2012, because of pain in his back and neck from standing that could not be accommodated by a chair. He also testified that when he would get stressed while working in sales, he would get manic and OCD. He also had days when he was so tired that he could not keep his eyes open. While selling cell phones, his district manager would ask him about contracts, and when he did not sell, then he was reprimanded and he would get defensive. Plaintiff believed he was threatened to be fired at leave five times in two and a half weeks. Plaintiff confirmed that his testimony was that they were riding him and he reacted. At the time, he believed that he was taking Geodon capsules and Zoloft. The Geodon would make him tired and cranky, and he would become manic. The main side effects were tiredness. AR 50-54. Plaintiff reported that he has been on six or seven different types of medications. AR 55. Plaintiff also testified that his physical problems contribute to his depression. When he has depression, it makes him "over-the-top angry," and he wants to stay alone. AR 65.

When asked about his work history, Plaintiff estimated that in the ten-year period between 2001 and 2012, he had maybe 15 or 16 jobs. AR 55-56. There were a few companies he would leave for five, six or seven months and then return when a different manager was charge. Plaintiff further testified that most of the time he "would find a flaw and then either get fired from or have to quit." AR 56. Plaintiff believed that he could not concentrate. When confronted with his earnings records between 2000 and 2005, Plaintiff agreed that he could concentrate well enough to make some good money. AR 56-57. Plaintiff admitted that there were times when he "sold a lot of products and did make some pretty good money." AR 57.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE") Ruth Arnush. The VE testified that Plaintiff's past work was characterized as sales clerk and truck driver. AR 66. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work background. This person could perform work at the light level, but never climb ropes, ladders or scaffolds, could occasionally

3

perform all postural functions, could understand, remember and carry out simple and detailed, but not complex, instructions, could interact appropriately with co-workers and supervisors on an occasional and superficial basis, and could adjust to changes in routine work environments. The VE testified that such a person could not perform any of the claimant's past work, but there were other jobs that he could do, such as hand packer, flagger, and delivery driver. AR 66-67.

For the second hypothetical, the ALJ asked the VE to assume the same as the previous hypothetical, but the person could not even occasionally perform or interact with co-workers and supervisors over a sustained 40-hour work week. The ALJ clarified that contact with co-workers and supervisors would be less than occasional and with no contact with the public. The VE testified that this hypothetical person could still do the three jobs identified for the first hypothetical. AR 67-68.

For the next hypothetical, Plaintiff's counsel asked the VE if a person could not make it to work five days a week on a regular basis, could not get there on time and had an attendance problem where two days out of the week they would not show up on time or they would come in late. The VE testified that this person would not be able to sustain competitive employment. AR 68-69.

For the next hypothetical, Plaintiff's counsel asked the VE to assume a person who would have such severe mood swings during the course of the day that may end up in displays of anger or severe frustration and would interfere with his concentration such that he would be off task at least 20 to 25 percent of the workday. The VE testified that this person could not sustain employment. AR 69.

For the next hypothetical, Plaintiff's counsel asked the VE to assume a person that would take medication on a daily basis that would make dizzy and drowsy to the extent he would be off task at least 20 to 25 percent of the time during every workday. The VE testified that this person could not sustain employment. AR 69-70.

For the final hypothetical, Plaintiff's counsel asked the VE to assume a person with extreme difficulties appropriately interacting with the public, extreme difficulties interacting appropriately with supervisors and extreme difficulty with appropriately interacting with co-workers. The VE testified that this hypothetical person could not sustain competitive employment. AR 70.

///

///

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-30. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 6, 2012, his alleged onset date. AR 20. Further, the ALJ identified disorders of the spine, obesity and affective disorders as severe impairments. AR 20-21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 21-23. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except he could never climb ropes, ladders or scaffolds, could occasionally perform all postural functions, could understand, remember and carry out simple and detailed, but not complex instructions, could interact appropriately with coworkers and supervisors on an occasional and superficial basis and could interact with the public on an occasional basis. AR 23-28. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 28-29. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not free of legal error. Specifically, Plaintiff asserts that the ALJ improperly rejected the opinion of his treating physician, Dr. Roy del Rosario. (Doc. No. 17 at p. 8.)

## DISCUSSION[3]

On January 24, 2014, Dr. del Rosario submitted a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form. Dr. del Rosario opined that Plaintiff had marked limitations in the ability to understand, remember and carry out simple instructions and had extreme limitations in the ability to make judgments on simple and complex work-related decisions and understand, remember and carry out complex instructions. Dr. del Rosario identified the factors supporting these

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

limitations as mood instability, depression, anger, poor coping skills and poor concentration. Dr. del Rosario further opined that Plaintiff had extreme limitations in his ability to interact appropriately with the public, supervisors and co-workers and in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr. del Rosario described the factors supporting these additional limitations as mood swings, depression, anger, cognitive deficits and poor concentration. AR 528-30.

In assessing the opinion of Dr. del Rosario, the ALJ stated as follows:

> Dr. Roy del Rosario completed a Medical Source Statement of Ability to do Work-Related (Mental) Activities and opined the claimant has **marked** limitation in his ability to understand, remember and carry out simple instructions. He has **extreme** limitation in his ability to understand, remember and carry out complex instructions. The claimant has **extreme** limitation in his ability to make judgment on simple and complex work-related decisions. He has **extreme** limitation in his ability to interact appropriately with coworkers, supervisors and the public. [ ] Given the totality of evidence and my observation of the claimant as he testified during the hearing, I give little weight to this opinion because Dr. del Rosario offered no diagnostic testing to support these limitation. Moreover, his treatment records are largely from the time period before the alleged onset date of disability, and those that are after that date are almost illegible and inconclusive at best. [ ] I also note that although in Exhibit 3F/3, Dr. del Rosario indicated that the claimant had a GAF score of 45 on July 14, 2010—indicating a serious limitation or symptoms—the fact is that in spite of such a dire assessment, the claimant was still managing to work at levels exceeding minimal substantial gainful activity amounts through 2011 (Ex. 3D). Thus, I find that the claimant is not as limited as determined by this expert and I therefore give his conclusions little weight.

AR 27 (emphasis in original). As noted above, Plaintiff asserts that the ALJ improperly rejected Dr. del Rosario's opinion. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the

Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

Here, Dr. del Rosario's opinion was contradicted by multiple other doctors, including two consultative examiners, Drs. Elmo Lee and Lanita Barnes. In particular, Dr. Lee, after completing a mental status examination in February 2013, opined that Plaintiff had "the ability to perform simple and repetitive tasks and detailed and complex tasks based upon this interview," "can accept instructions from supervisors and interact with coworkers and the public if he continues with his current psychiatric treatment," "can perform work activities on a consistent basis without special or additional instruction," "can maintain regular attendance in the workplace and complete a normal workday/workweek without interruptions from a psychiatric condition if he continues with his current psychiatric treatment," and "can deal with the usual stress encountered in the workplace if he continues with his current psychiatric treatment." AR 478. Similarly, Dr. Barnes, after completing a mental status examination in October 2013, opined that Plaintiff was "unimpaired in his ability to perform simple and repetitive tasks, as well as detailed and complex tasks," "moderately impaired in his ability to accept instructions from supervisors," "mildly impaired in interacting with coworkers and the public," "mildly impair[ed] in performing work activities on a consistent basis without special or additional instruction," "mildly impaired in maintaining regular attendance in the workplace and completing a normal workweek without interruption from a psychiatric condition," and "moderately impaired in dealing with stressors encountered in the workplace." AR 508.

Given that the opinions of Drs. Lee and Barnes contradicted Dr. del Rosario's opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. del Rosario's opinion. Here, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. del Rosario's opinion.

First, the ALJ assigned greater weight to the opinions of the examining physicians, Drs. Lee and Barnes. In particular, the ALJ gave significant weight to the opinion of Dr. Elmo Lee, who performed a consultative psychiatric evaluation on February 23, 2013, and gave greater weight to the opinion of Dr. Lanita Barnes, who performed a consultative psychiatric evaluation on October 19, 2013. AR 26-27. An examining physician's opinion can constitute substantial evidence to reject a

treating physician's opinion if the examining physician's opinion "rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence") (citations omitted); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinion of an examining physician may constitute substantial evidence to discount a treating physician's opinion). Here, both examining physicians completed independent mental status examinations and made clinical findings regarding Plaintiff's limitations that were not as extreme as those identified by Dr. del Rosario. Plaintiff has not challenged the ALJ's evaluation of the examining physicians' opinions.

The ALJ also assigned little weight to Dr. del Rosario's opinion because it was unsupported by any diagnostic testing. AR 27. Notably, the mental-impairment questionnaire was a preprinted, check-the-box form, on which Dr. del Rosario provided little explanation for his findings. AR 528-30. An ALJ may properly discount a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole, … or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ also may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation omitted); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"). In this instance, Dr. del Rosario's check-the-box form did not provide any diagnostic testing to support limitations related to Plaintiff's cognitive abilities, concentration, judgment, memory or understanding.

The ALJ also assigned little weight to Dr. del Rosario's opinion because his treatment records "were largely from the time period before the alleged onset date of disability." AR 27. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, the Ninth Circuit has held that the ALJ is required to consider "all medical opinion evidence." *Tomassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In an unpublished opinion, the Ninth Circuit applied this rule to include evidence that predates the alleged onset date of disability. *See Williams v. Astrue*, 493 Fed.Appx. 866,

868 (9th Cir. 2012); *see also Rios v. Berryhill*, No. 14-CV-00654-JCS, 2018 WL 905849, at *17 (N.D. Cal. Feb. 15, 2018) (applying reasoning of Ninth Circuit memorandum opinions requiring ALJ to consider evidence that predates onset date); *Yanes v. Berryhill*, No. 2:16-CV-518-EFB, 2017 WL 4181086, at *3 (E.D. Cal. Sept. 20, 2017) ("medical opinions are not per se irrelevant merely because they predate the disability onset date, particularly where the nature of the disability does not involve a traumatic onset").

Despite discounting Dr. del Rosario's opinion based on treatment records that predated the alleged onset date, the ALJ did not wholly disregard those records or fail to consider them. Instead, the ALJ properly took into consideration the fact that Plaintiff was apparently able to work for many years while suffering from the same impairments. *See Contreras v. Berryhill*, No. CV 16-6650-JPR, 2017 WL 2798521, at *5 (C.D. Cal. June 28, 2017); *Hubble v. Astrue*, 467 Fed.Appx. 675, 677 (9th Cir. 2012) (citing *Gregory v. Bowen*, 844 F.2d 666–67 (9th Cir. 1988)) (finding that ALJ may permissibly conclude that a claimant's "ability to work with similar impairments in the past undermines [the claimant's] claimed inability to work now"). In particular, the ALJ noted that Dr. del Rosario assigned Plaintiff a GAF score of 45 on July 14, 2010, which indicated a serious limitation or symptom, but despite this "dire assessment," Plaintiff was "still managing to work at levels exceeding minimal substantial gainful activity amounts." AR 27, 318.

Although Plaintiff admits that the GAF scores assessed by Dr. del Rosario "predated the alleged onset date and were assessed during a period [Plaintiff] worked at the substantial gainful activity level," he argues that the ALJ failed to consider that he worked several different jobs between 2006 and 2012, and that those jobs ended because of behavioral issues. (Doc. No. 17 at p. 9.) Plaintiff's argument is not persuasive given Plaintiff's own admission that he worked at substantial gainful levels during the period prior to his alleged onset date, and there is no record evidence that his mental impairments prevented him from securing work. AR 56-57.

Plaintiff also argues that the ALJ improperly discounted Dr. del Rosario's treatment records after the alleged onset date as almost illegible and inconclusive at best. To support this argument, Plaintiff cites to an isolated treatment record from July 2013 (AR 498). (Doc. 17 at p. 10). Plaintiff's argument that the ALJ erred is not persuasive given the evaluations of Plaintiff's mental status by the

consultative examiners both before and after July 2013, and the absence of any reference to additional treatment records from Dr. del Rosario following the alleged onset date. Plaintiff's additional citation of evidence from a visit to Antelope Valley Hospital with suicidal ideations on July 15, 2013, also is unpersuasive. (Doc. 17 at p. 10.) According to the record, Plaintiff's visit stemmed from an argument with his wife regarding her family moving out and Plaintiff no longer had suicidal ideations after talking with the mental health evaluator. AR 694. The ALJ considered this visit, but noted that it was not an extended and he had no further psychiatric hospitalizations or episodes of decompensation. AR 23.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Nick Angelo Spalliero.

IT IS SO ORDERED.

    Dated: __**March 13, 2018**__            ___/s/ Barbara A. McAuliffe____
                                                      UNITED STATES MAGISTRATE JUDGE